**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE No. 17-CV-22114-SCOLA/TORRES

MAGDALENA BORGES,

      Plaintiff,

v.

NANCY BERRYHILL, acting
Commissioner of Social Security
Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

      This matter is before the Court on the Parties' Cross Motions for Summary Judgment. Plaintiff MAGDALENA BORGES ("Plaintiff" of "Borges") filed her Motion for Summary Judgment on November 2, 2017. [D.E. 11]. Defendant NANCY BERRYHILL ("Defendant" or "Commissioner") filed her own Motion on December 7, 2017 [D.E. 12] and responded in Opposition to Borges' Motion that same day. [D.E. 13].[1] We must now determine whether the decision reached by the Administrative Law Judge ("ALJ") is supported by the substantial evidence and whether the correct legal standards were applied. After a review of the Parties' briefs, the record in this

_____

[1]    All pre-trial, non-dispositive matters in this case were assigned on June 6, 2017. [D.E. 3].

case and all relevant authorities, we hereby **RECOMMEND** that the Commissioner's Motion be **GRANTED**, Plaintiff's Motion be **DENIED**, and the ALJ's decision be **AFFIRMED**.

## I. *FACTUAL BACKGROUND*

### A. *Procedural Background*

Borges is 46 years old and lives in Miami, Florida. [R. at 52].[2] She initiated her claim for disability benefits on January 15, 2014, claiming that the onset of her disability took place on April 1, 2013. *Id*. at 66. On February 19, 2014, she received notification that the Administration had denied her request for benefits, *id*. at 86, and she requested reconsideration of that decision on March 13, 2014. *Id*. at 94. A second denial came on April 21, 2014, which resulted in her request that her case be heard by an Administrative Law Judge. *Id*. at 96, 110. That hearing took place in Miami, Florida on June 13, 2016, the results of which are discussed in greater detail below. *Id*. at 123.

### B. *Summary of the Relevant Medical Records*

#### 1. *Dr. Antonio Tauler*

Borges consulted with Dr. Antonio Tauler at the Miami Behavioral Health Center during the period in which she claims she suffered a disability. On a visit dated October 19, 2014, Dr. Tauler described Borges' mood as depressed and found her memory to be impaired. [R. at 397]. Despite this, Dr. Tauler noted improvement

---

[2]     Citations to the Social Security record are denoted with the letter "R." The pertinent documents can be found at D.E. 9.

in the reduction of acuity and frequency of her reported symptoms, and found Plaintiff to be compliant in taking her prescribed medications. *Id*. at 398. Borges saw Dr. Tauler again on November 24, 2014, where she reported once again that she felt depressed and anxious. *Id*. at 404-406. She also complained that she heard voices and had difficulty sleeping. *Id*. at 406. Dr. Tauler recommended that she follow-up with a psychiatric professional, which he hoped would reduce her symptoms and allow her to begin managing her own care. *Id*. at 406-07.

Plaintiff returned to Dr. Tauler on February 18, 2015. *Id*. at 395. At that time, Plaintiff reported experiencing auditory hallucinations. *Id*. Dr. Tauler also noted that Plaintiff did not report issues with insomnia and she was alert and oriented to time, place and person. *Id*. Plaintiff also denied delusional symptoms. *Id*. On April 17, 2015, the reported conditions remained the same, and the auditory hallucinations continued to appear in the records on several subsequent visits to the office. *Id*. at 384, 387, 391, 393 and 378.

On April 5, 2016, Dr. Tauler completed a medical assessment related to Plaintiff's ability to perform work related activities. *Id*. at 429. He rated Borges as "poor" in several categories, including in her ability to follow work rules, relate to co-workers, interact with supervisors and maintain attention and concentration. *Id*. Tauler also found that Borges could not understand or remember complex job instructions and felt she was limited in carrying out "simple" instructions. *Id*. at 430. He wrote that Borges suffered from "significantly impaired short term memory,"

which he believed made it "difficult if not impossible to perform even simple instructions." *Id*.

### 2.   *Dr. Elena R. Valor*

Plaintiff visited Dr. Valor, her family physician, beginning on July 9, 2012. [R. at 277]. The doctor listed Plaintiff's chief complaint as intermittent sciatic pain and numbness in both hands. *Id*. The record also contains notations about the patient's history with depression. *Id*. Dr. Valor performed a mental status examination during that visit that showed "normal" results. *Id*. at 276. Borges then returned to Dr. Valor on August 7, 2012, this time complaining about issues related to a bacterial infection. *Id*. at 275. Dr. Valor once again performed a mental status examination, and once again she listed her findings as "normal." *Id*. at 276. Valor diagnosed Borges with obesity, a bacterial infection, carpal tunnel syndrome, depression and anxiety disorder. *Id*. at 275-76.

Plaintiff continued to see Dr. Valor that year, and on August 7, 2012 her mental status examination once again showed normal findings.  On December 3, 2012, Plaintiff returned to Dr. Valor and discussed feelings of depression. *Id*. at 272. During that visit, Borges claimed that she could not continue taking Lexapro because her insurance did not cover the medication. *Id*.

Plaintiff did not return to see Dr. Valor for another eight months. *Id*. at 269. Plaintiff scheduled her next visit to the doctor on August 5, 2013, where she complained of depression. *Id*. at 269. On this same visit, Dr. Valor found that Plaintiff was "feeling well otherwise," and a mental status examination continued to show

normal results. *Id*. at 269-270. In February of 2014, Plaintiff reported side effects related to her Lexapro prescription, stating that it interfered with her sexual life. *Id*. at 266. She also complained that her depression level had increased, a complaint that continued to be reported in subsequent visits on March 27, June 2, and November 3, 2014. *Id*. at 302, 305 and 334. Dr. Valor noted that Borges had been seeing a psychiatrist. *Id*. Plaintiff also began reporting increased anxiety, difficulty sleeping and abdominal pain during these visits. *Id*. at 302, 305.

Beginning in 2015, Borges initially reported improvement, although the doctor noted that she continued taking medication for her medical conditions. *Id*. at 337. She also once again discussed issues related to sciatica. *Id*. at 337, 340. The complaints related to depression and anxiety returned on a visit that took place on December 3, 2015, which is also noteworthy because it notes Plaintiff's alleged difficulty with her hearing. *Id*. at 341.

On April 7, 2016, two months prior to Plaintiff's hearing took place, Dr. Valor completed a work-related activity assessment. *Id*. at 432. In terms of physical limitations, Dr. Valor found that Plaintiff could lift up to 10 pounds occasionally, but never carry any weight in relation to the performance of any employment she might obtain. *Id*. Dr. Valor opined that Borges could occasionally balance, crouch, kneel, and that she could stoop with frequency, but could never climb or crawl. *Id*. at 434. In describing her mental condition, Valor wrote that Plaintiff suffered from "severe anxiety and nervousness," which prevented her from sitting still without movement

throughout the day. *Id*. at 433. Dr. Valor also felt that Plaintiff's impairments affected her ability to deal with people on a day to day basis. *Id*. at 435.

### 3.   *Diana M. Davidson, Ph.D.*

On February 14, 2014, Plaintiff reported to IMA Evaluations, Inc. in Miami, Florida to undergo a psychiatric examination with Dr. Diana Davidson. [R. at 293]. Plaintiff told Dr. Davidson that she drove to the facility herself but had recently lost her job due to poor work performance. *Id*. She had not been able to obtain subsequent employment "despite having applied for several jobs." *Id*.

When asked to list her symptoms, Plaintiff claimed she experienced difficulty sleeping, decreased appetite, loss of sexual function, feelings of guilt, hopelessness, loss of energy and increased irritability. *Id*. at 294. She reported no issue when it came to dressing, bathing, and grooming herself, and discussed preparing food "about twice weekly." *Id*. at 296. She cleaned her home and her laundry once a week and reported no issues driving her vehicle. *Id*. In terms of daily activities, Plaintiff stated that she watched television, did chores, talked to friends, and rested throughout the day. *Id*.

Dr. Davidson found Plaintiff cooperative during her examination, and reported her "manner of relating, social skills, and overall presentation" to be "adequate." *Id*. at 295. Dr. Davidson listed Borges' thought processes as "coherent" and "goal directed," and stated that Plaintiff did not exhibit signs of delusions, hallucinations or disordered thinking. *Id*. Davidson found Plaintiff's concentration and attention as

"grossly intact," but noted that her recent and remote memory appeared impaired.

*Id.*

> Dr. Davidson's medical source statement reads as follows:
>
> Vocationally, the claimant appears to be capable of following, understanding and remembering simple instructions and directions with some prompting and repetition. She appears to be capable of performing simple mental tasks with supervision. She appears to be capable of maintaining attention and concentration for simple tasks. She is likely to have some difficulty regularly attending to a routine and maintaining a schedule. She appears to be capable of making appropriate simple decisions. She appears to be able to relate to and interact appropriately with others. She appears to be capable of dealing appropriately with mild to moderate stress.

*Id.* at 296. To conclude, Davidson found that "[the r]esults of the examination appear to be consistent with psychiatric problems, but in itself this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." *Id.* Overall, Borges' prognosis was listed as "fair." *Id.* at 297.

### 4.   *Dr. Diana Glaccum-Gavagni*

Borges consulted with Dr. Glaccum-Gavagni in the spring and summer of 2014. The initial assessment took place on April 14, 2014. [R. at 321]. Plaintiff reported depression and anxiety in addition to hallucinations, which she described to the doctor as "seeing her grandmother floating, dressed in white." *Id.* at 321. Plaintiff denied that she had received inpatient care for her psychological symptoms but stated that she received outpatient care at a hospital in 2005. *Id.* During a mental status examination, Dr. Glaccum-Gavagni found Borges to exhibit calm, cooperative behavior, although her mood appeared depressed. *Id.* at 322. She found her insight and judgment to be "fair," and her thought process "organized." *Id.* During this visit,

the doctor took note that Plaintiff told her she was seeking social security disability benefits and that her request for same had been denied by the Administration. *Id*. at 321.

The next visit took place on May 12, 2014. *Id*. at 320. Dr. Glaccum-Gavagni noted that Plaintiff had been taking Lexapro and started Abilify to stabilize her mood. She described Plaintiff's mood as "anxious" but marked "none" in the section asking whether Borges suffered "delusions" or "hallucinations." *Id*. Similar findings continued throughout Plaintiff's next three visits with the doctor. *Id*. at 317-319. On her last visit with Glaccum-Gavagni, Plaintiff reported that the medication was helping her anxiety, anger and sadness. *Id*. at 317. Glaccum-Gavagni described her mood as "good" and the other results of her examination were normal. *Id*. The doctor ordered her to continue her current medication regiment. *Id*.

### C.   *Appeals Hearing and the ALJ's Decision*

On June 13, 2016, ALJ Mark R. Dawson held a hearing in Miami, Florida. [R. at 34]. Plaintiff appeared personally, along with her attorney. *Id*. Brenda Martinez-Richardson, the vocational expert proffered by the Administration, appeared telephonically. *Id*.

Plaintiff discussed her past work experience at the hearing. She stated that her previous jobs involved "mostly clerical" work, with some additional customer service aspects. *Id*. at 38-39. In 2005, she worked as a "mailer" for a company called Payrolling Partners. *Id*. at 40. At some point in the past she was also employed by an

insurance company, and in 2012 she worked part-time in a Macy's department store "stocking the back room with shoes." *Id*. at 39-40.

Borges testified that she constantly experiences feelings of depression, explaining that most days she feels "sad" and "helpless." *Id*. at 43. The issues began in 2005, when she claims she began suffering anxiety attacks. *Id*. at 45. Borges stated that these attacks required hospitalization at several points prior to the alleged onset of her disability and that doctors prescribed Lexapro in an effort to treat the condition. *Id*. at 46. She also suffers from occasional nightmares, which usually involve a family member who sexually assaulted her as a child. *Id*. at 44. The nightmares are at times accompanied by auditory hallucinations. *Id*. at 44. She regularly consults Dr. Tauler about these issues and admitted that she pondered suicide due to the overwhelming nature of her feelings. *Id*. at 45.

As a result of her condition, Plaintiff stated that she often experiences difficulty sleeping, with disturbances occurring every three or four hours throughout the night. *Id*. at 40. She takes her son to school in the morning but returns home and immediately tries to sleep for a few hours as a result of her insomnia. *Id*. at 41. She is not interested in TV and often does not leave her home throughout the day. *Id*. Her husband, who works with an engineering company, has threatened her with divorce due to the burden she believes she places on her family. *Id*. at 43-44.

The vocational expert ("VE") categorized Plaintiff's former work as "stock clerk" and "general clerk." *Id*. at 48. The ALJ asked the VE whether a hypothetical claimant, suffering from the same conditions and experiencing the same limitations

as those alleged by Plaintiff,[3] could perform relevant work in the national economy. The VE answered this question in the affirmative, stating that such a hypothetical claimant could perform work as a "marker," "checker," and "router." *Id*. If, however, such an individual was restricted to only occasional handling and fingering bilaterally, or if the hypothetical individual had no ability to deal with work stress, function independently, or behave in an emotionally stable manner, the VE testified that this would preclude all employment. *Id*. at 50. Plaintiff's counsel did not cross examine the VE. *Id*. at 50-51.

The ALJ's decision came on July 8, 2016. ALJ Dawson concluded that Plaintiff did not qualify for disability benefits and was disabled as defined by the Social Security Act. In reaching this conclusion, the ALJ applied the sequential evaluation process that must be used when evaluating these types of claims. *See* 20 C.F.R. § 404.1520; 416.920. This process requires the ALJ to consider, in sequence, whether a claimant: (1) is working; (2) suffers from an impairment sufficiently "severe," as defined by the Social Security regulations; (3) suffers from a condition that meets or medically equals a "listed" impairment found at 20 C.F.R. Part 404, Subpart P, Appendix 1 (a "listed impairment"); (4) can return to her past relevant work; and (5) if not, whether she can perform other work as it exists in the national economy.[4]

---

[3]    Those limitations included exposure to pulmonary irritants, hot and cold extremes, decreased social interaction with the public, and simple instructions at work. [R. at 49].

[4]    If a claimant establishes that an impairment prevents her from perform past relevant work, the burden shifts to the Commissioner at step five to show that other jobs in the national economy exist which, given the claimant's limitations as a result

The ALJ first determined that Plaintiff had not engaged in substantial gainful employment since April 1, 2013, the alleged onset of her disability. [R. at 15]. Next, the ALJ determined that Plaintiff suffered from the following "severe" impairments: (1) obesity; (2) asthma; (3) depressive disorder; (4) anxiety disorder; and (5) bilateral carpal tunnel syndrome. *Id*. At the third step, the ALJ determined that Plaintiff's condition did not meet or exceed one of the listed impairments. *Id*.

Before moving on to step four and five, the ALJ must first ascertain Plaintiff's residual functional capacity ("RFC"), which the regulations define as an individual's ability to perform physical and mental work activities on a sustained basis despite limitations from the alleged impairments. 20 C.F.R. § 404.1520(e); 416.920(e). The ALJ completed this intermediary step, determining that Plaintiff possessed the residual functional capacity to perform "a limited range of light exertional work" as defined by 20 C.F.R. §§ 404.1567(b), 416.967(b) and Social Security Ruling 83-10. *Id*. at 16. The decision discussed Plaintiff's capabilities with regarding her future employment prospects and the limitations caused by her condition:

> [Borges] can lift 20 pounds occasionally and 10 pounds frequently. She can sit 6 hours in total, and stand or walk 6 hours in total, in an 8-hour workday. She can push and pull to the extent of her lifting and carrying capacity. The claimant cannot work in extreme of heat or cold, nor should she be exposed to dust, fumes, odors, or other pulmonary irritants. The claimant can frequently handle or finger bilaterally. The claimant can understand, remember, and carry out simple instructions.

of the alleged medical condition, she can still perform despite the claimed impairments. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir 1986). If the Commissioner carries this burden, the claimant must then rebut the finding and show that she cannot, in fact, perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987).

> She can make simple, work-related decisions. She can deal with changes in a routine work setting. The claimant is limited to frequent interaction with the public.

*Id.* The ALJ concluded her findings by determining that Borges could not perform any of her past relevant work, but could perform other work that existed in significant numbers within the national economy. Those positions included: (1) marker, Dictionary of Occupation Titles ("DOT") No. 209.587-034 (with 291,000 positions available nationwide); (2) checker I, DOT No. 222.687-010 (with 24,000 jobs available nationwide); and (3) router, DOT No. 222.587-038 (with 41,000 jobs available). Thus, the ALJ found that Borges was not disabled and rejected her claim for social security benefits and supplemental income. *Id.* at 24-25.

Plaintiff's appeal of the decision with the Administration was denied on May 25, 2017. *Id.* at 1-3. She then initiated these proceedings in federal court on June 6, 2017. [D.E. 1].

## II.    *LEGAL STANDARD*

The ultimate determination in these cases is whether the claimant is, in fact, disabled. A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, the physical or mental impairment must be so severe that the claimant is not only unable to perform previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

work" as it exists in the national economy. *Id.* at 423(d)(2)(A). A claimant bears the burden of proving that he suffers from the claimed disability. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Judicial review of the Commissioner's decision is limited to a determination as to whether: (1) there is substantial evidence in the record as a whole to support the ALJ's findings; and (2) whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401). In determining whether such substantial evidence exists, a reviewing court should not re-weigh evidence or decide the facts anew. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). While we must give great deference to an ALJ's factfindings, *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015), such a presumption does not attach to the ALJ's conclusions of law. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.   ANALYSIS

Plaintiff argues that her case should be remanded for three distinct reasons: (1) the ALJ gave improper weight to certain medical opinions she contends support her disability claim; (2) the ALJ's residual functional capacity analysis is not

supported by substantial weight; and (3) the ALJ improperly assessed Plaintiff's credibility.

### A.    *The ALJ's Assessment of Opinion Evidence*

#### 1.    *Dr. Davidson as Compared to Dr. Tauler*

Plaintiff's initial attack on the ALJ's decision involves the weight given to the opinions of Dr. Davidson, who she described as "an SSA consultant," in contrast to that given to Dr. Tauler, Borges' treating psychiatrist at Miami Behavioral Health Center. [D.E. 11, p. 14].[5] The opinion of a treating physician must be given "substantial" or "considerable" weight unless good cause is shown not to do so. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists under the following circumstances: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id*. at 1341. If the ALJ refuses to give controlling weight to a treating physician's opinion, her or she must clearly articulate the reasons for doing so. *Phillips*, 357 F.3d at 1241.

---

[5]    In a Medical Assessment dated April 5, 2016, Dr. Tauler found that that Borges had no ability to understand, remember or carry out complex or detailed job instructions. [R. at 429]. Dr. Tauler also opined that Plaintiff lacked the ability to interact with the public, deal with work stress or function independently. *Id*. The doctor wrote "Borges has poor copying and social skills and is unreliable and emotionally unstable." *Id*. at 430. When discussing her demonstrable limitations, the doctor indicated that Plaintiff would be unable to tolerate the stresses and demands of any job. *Id*. at 429.

Here, the ALJ complied with his legal obligations, and his determination is supported by the substantial evidence. The ALJ declined to give controlling weight to Dr. Tauler's medical source statement because it was "inconsistent with the overall record" and "not supported by clinical or diagnostic findings." [R. at 21]. Thus, he articulated reasons as to why controlling weight was not provided to the findings included in the medical source statement – i.e., that the evidence supported a contrary finding. As explained in her decision, the ALJ made this determination because "there [was] no indication what [Dr. Tauler] did to determine that the claimant's memory was impaired" in comparison with Dr. Davidson, who discussed individual tests she performed prior to assessing Plaintiff's memory. Further, the ALJ was troubled by Dr. Valor's determination because his own records did not reflect that he used laboratory or diagnostic techniques to support his findings, despite the regulations requiring such support. *Id.* at 22; 20 C.F.R. § 404.1508; *see also Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745 (11th Cir. 2012) (ALJ had "good cause" not to heed medical opinions of treating physicians because they lacked "any explanation or basis in clinical findings" and "were contradicted by the other record evidence.").

Further, the decision makes clear that ALJ considered and discussed Dr. Tauler's conclusions in detail, but gave it little weight because it was not bolstered by – and, at times, was directly contradictory to – the other evidence of record. *See Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (good cause to discount physician's opinion exists when opinion not bolstered by other record evidence). The

ALJ provided credible reasons why Dr. Tauler's statements were not entitled to controlling weight, specifically discussing the substantial inconsistencies between Dr. Tauler's records – which are full of abnormal findings and reports that Plaintiff suffered from psychotic episodes – with those from Dr. Glaccum-Gavagni and Dr. Davidson, whose records reflect normal mental status examinations and discussions of improvement in treating Plaintiff's condition with medication. *Id.* at 20. Thus, the ALJ articulated his reasons for refusing to give substantial weight to the findings included within Dr. Tauler's medical records, and we find no error with the decision to do so. *Markuske v. Comm'r of Social Sec.*, 572 F. App'x 762, 765 (11th Cir. 2014) (finding no error in discounting a treating physician's medical source statement because the physician's treatment notes and other record evidence contradicted the medical source statement); *Miles* 469 F. App'x at 745 (affirming decision not to give disability determination made by treating physician controlling weight because "the ALJ relied on the more detailed medical opinions provided by three other examining physicians.").

In view of the record evidence, we find that the ALJ had good cause for rejecting the opinions contained within Dr. Tauler's assessment.

### 2.     *Dr. Valor*

Plaintiff next argues that the ALJ's decision failed to give proper weight to Dr. Valor's opinions and that the assessment of those opinions were legally deficient because the ALJ failed to go through each of the six factors set forth in 20 C.F.R. §§ 404.1527 and 416.927(c). [D.E. 19, p. 16]. Those regulations state that when an ALJ

assesses medical opinions contained in the record, he must consider several factors to determine how much weight to give each opinion, including whether the physician has examined the claimant; the length, nature and extent of a treating physician's relationship with the claimant; the medical evidence and explanation supporting the physician's opinion; how consistent the physician's opinion is with the "record as a whole"; and the physician's specialty. *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing to 20 C.F.R. § 420.1527(c); 416.927(c)).

We have found no support for Plaintiff's argument that the ALJ *must* apply each individual factor found in 20 C.F.R. § 420.1527(c) when assessing a physician's opinion, and her Motion does not cite to any authority that would support such a position. Further, a review of the regulation seemingly forecloses this argument, as it makes no mention of any *requirement* to follow the factors outlined by 20 C.F.R. § 420.1527(c). Instead, it indicates that those factors are mere considerations used when accounting for the weight given to a medical opinion. *See* 20 C.F.R. § 420.1527(c)(2) (providing that a treating source's opinion is not given controlling weight if it is inconsistent with the other substantial evidence); *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2001) ("[T]he ALJ is not required to explicitly address each of those factors."); *Marshall v. Comm'r, Soc. Sec. Admin.*, 660 F. App'x 874, 876 (defining 20 C.F.R. § 420.1527(c) as listing factors to be considered when determining what weight to give a physician's medical source opinion, not requirements that must be followed).

Ultimately, an ALJ must provide good cause for rejecting a treating physician's opinion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).[6] The ALJ did just that, explaining in her decision that Dr. Valor's opinion was "internally inconsistent," "inconsistent with the overall record," and "not well supported by clinical or diagnostic findings." [R. at 22]. She supported this determination with citations to the medical record that, in her view, reflected the inconsistencies that led to her refusing to give Dr. Valor's opinion controlling weight. The decision to do so rested on solid ground. *See* 40 C.F.R. § 404.1527(d)(2) (requiring the ALJ to give controlling weight to a treating source's opinion "if we find…[the] impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in your case record.") (emphasis added); *Damone v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 473, 475 (11th Cir. 2016) (affirming ALJ's decision to discount opinion from claimant's treating physician because it was "inconsistent with other medical evidence, his own records and particularly with the diagnostic imaging.").

The ALJ's decision is also supported by our own review of the substantial evidence in the record. The ALJ took issue with the portions of Dr. Valor's opinion that stated Borges suffered from "severe anxiety and cannot sit still." [R. at 22]. But the records do not show any indication that Plaintiff suffered significant physical

---

[6]     As stated above, good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241.

limitation during her course of treatment, and the anxiety findings are contradicted by multiple and continuous mental status examinations that resulted in normal findings. In our view, this evidence is sufficient to support the ALJ's determination that the opinions in the medical source statement were inconsistent with Dr. Valor's own records and the record as a whole.

As such, the ALJ articulated the requisite good cause in deciding to assign little weight to Dr. Valor's opinion. *See Winschel*, 631 F.3d at 1179 (a treating physician's opinion must be given substantial or considerable weight unless "good cause" is shown to the contrary); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (in the end, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion). The decision to do so was not error and cannot support remand.

### 3.    *The Vocational Expert and Dr. Glaccum-Gavagni*

Plaintiff makes two final points concerning the weight given to various providers. [D.E. 11, p. 17-18]. First, Borges argues that the ALJ discussed Dr. Glaccum-Gavagni's submissions in a "derogatory manner" because the ALJ noted that Plaintiff reported her Social Security submission and denial on her first visit with the doctor. *Id*., p. 18. Plaintiff argues that this observation has nothing to do with her psychiatric condition. *Id*. We reject this argument outright; there is no authority that would allow us to remand simply because such a detail was included in the decision, and the information is relevant simply for the fact that Borges' own medical provider included it in her file. Plaintiff also offers nothing beyond a mere rhetorical question to this Court in an attempt to support her disjointed argument

about the inclusion of the note, which is entirely insufficient as a matter of law. *See Ellison*, 355 F.3d at 1276 ("The ALJ has the basic obligation to develop the record fully and fairly, but the claimant has the burden of proving that she is disabled and the responsibility of producing evidence in support.").

Plaintiff also challenges the weight given to the testimony of the vocational expert, Ms. Brenda Martinez-Richardson. [D.E. 11]. Plaintiff contends that it was error not to address each of the various hypotheticals posed by the ALJ to the VE during the hearing, which included the following statements: (1) that an individual who could only occasionally handle and finger materials bilaterally would eliminate employability at the positions the vocational expert deemed Plaintiff able to work; (2) the same individual that could not sit more than an hour a day and required frequent breaks to walk throughout the day would preclude employability at those same positions; and (3) the hypothetical individual could not work if she lacked the ability to deal with work stress or otherwise function in an emotionally stable manner. [R. at 49-50; D.E. 11, p. 17-18]. Plaintiff's only contention is that the ALJ failed to address the answers to these hypotheticals in his decision and "instead limit[ed] himself to this original hypothetical concerning a claimant that did not have the same degree of limitations." [D.E. 11, p. 18].

The ALJ did not err in doing so. First, a hypothetical "need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007); *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 828 (11th Cir. 2017). Additionally, the ALJ "need not include

findings in the hypothetical that the ALJ found to be unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). As addressed above, the ALJ had good cause to discount the opinions of Dr. Valor and Dr. Tauler, which contained the hypothetical limitations Plaintiff claims were erroneously excluded from the decision. Additionally, the ALJ found that Borges possessed the same residual functional capacity as the individual described in the first hypothetical,[7] and was therefore not required to rely on the VE's secondary responses regarding the more severe restrictions posed in the subsequent hypotheticals. *See Brown*, 680 F. App'x at 828 ("Based on a review of [claimant's] medical records, the ALJ determined that Brown's RFC was the same as the individual described in the first hypothetical…As a result, the ALJ was not required to rely on the VE's response to the fourth hypothetical."); *Crawford*, 363 F.3d at 1161. Accordingly, this argument also fails.

### B.  *The Residual Functional Capacity Assessment*

Plaintiff's next challenge takes aim at the ALJ's residual functional capacity assessment. Plaintiff argues "[the ALJ] systematically accorded minimal weight to those opinions of record that were inconsistent with his narrative that Ms. Borges was not disabled." [D.E. 11, p. 18]. Plaintiff supports this contention by citing to the records of Dr. Valor and Dr. Tauler that contained findings that she suffered limitations that might prevent her from working. *Id*. According to Plaintiff, the

---

[7]     As detailed in the next section, the ALJ's RFC analysis is supported by substantial evidence.

failure to consider these records caused the RFC determination to become "inherently flawed," and a remand is necessary so that a correct assessment, based on the limitations she claims were ignored, can be conducted.

"[T]he regulations define [residual functional capacity] as that which an individual is still able to do despite limitations caused by his or her impairments." *Phillips*, 357 F.3d at 1238. Social Security regulations mandate a discussion "of the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis…and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Social Security Ruling ("SSR") 98-p at 6. "The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). However, "[w]e do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude the ALJ considered the claimant's medical condition as a whole." *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Here, the ALJ found that Plaintiff possessed the residual functional capacity to perform a limited range of light exertional work, with certain physical limitations. He supported this finding by providing an extensive summary of the evidence of

record, discussing the evidence he relied upon in making that determination and identifying the exertional and non-exertional limitations that were supported by the record. [R. at 17-24]. He also discussed the lack of abnormal findings demonstrated by Plaintiff over the course of her treatment when mental status examinations were performed by her treating physicians, as well as several instances where Plaintiff discussed improvement in her condition with proper medication. *Id.* at 22, 23-24. It is apparent from the face of the decision that the ALJ "consider[ed] all of the evidence and found that it did not support the level of disability [Plaintiff] claimed." *Freeman*, 220 F. App'x at 960. Accordingly, Plaintiff's argument lacks merit.

At bottom, Plaintiff's issue really lies with the weight afforded the opinions of Drs. Tauler and Valor. But as we have discussed at length previously, the ALJ had good cause to give lesser weight to those opinions, and supported those determinations with credible citations to the record. Further, the decision clearly reflects that the ALJ considered all record evidence, including those records he chose not to give controlling weight to, when assessing Plaintiff's residual functional capacity. For these reasons, Plaintiff has failed to provide grounds that indicates the ALJ erred in conducting her assessment of Borges' work capacity, and remand would be inappropriate under these circumstances.

### C.   *Plaintiff's Credibility Assessment*

As a final point of contention, Borges argues that the ALJ did not properly assess her own credibility at the hearing. The Social Security regulations recognize that "[p]ain or other symptoms may cause a limitation of function beyond that which

can be determined on the basis of anatomical, physiological or psychological abnormalities considered alone[.]" 20 C.F.R. §§ 404.1545(e); 416.945(e). When a claimant attempts to establish disability through her own testimony concerning pain or other symptoms, she must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain [or other symptoms]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain [or other symptoms]." *Crow v. Comm'r Soc. Sec. Admin.*, 571 F. App'x 802, 807 (11th Cir. 2014) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224) (11th Cir. 2002)). The ALJ must "articulate specific reasons for questioning the claimant's credibility" if subjective symptom testimony is "critical" to the claim. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

Substantial evidence supports the ALJ's credibility determination. The ALJ found:

> [a]lthough there is a medical basis for the claimant's reports of pain and limitation, her statements about the intensity, persistence and limiting effects of her symptoms are inconsistent with the objective and other evidence in the records and are less likely to reduce her capacity to perform work-related activities to the extent she has asserted. The claimant's alleged limitations are not supported by the medical opinions given greater weight nor are they well supported by the examination findings of record.

[R. at 23]. The ALJ then provided support for this finding. First, he pointed out that "despite her regular reports of significant anxiety" Borges claimed limited her ability to work, multiple mental status examinations from other medical sources – including those by Dr. Davidson and a treating neurologist – undercut Plaintiff's assertions *Id.*

Second, the ALJ discussed several "inconsistent statements" made by Plaintiff concerning her daily activities, which she testified at the hearing prevented her from doing much of anything during the day, compared with statements made to doctors founds in the record indicating that she could perform a full range of activities and possessed the ability to get along well with others. *Id.* at 24. Third, the ALJ found that the record "suggests there has been an escalation in the claimant's complaints coinciding with the pendency of her application for disability," a finding he supported by citing to a gap in medical treatment following her initial and reconsideration denials. *Id.* Contrary to Plaintiff's assertion, substantial evidence supports the ALJ's credibility determination with relevant evidence, and we find no grounds to disturb that decision. *See Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 540 (11th Cir. 2016) (credibility determinations are the province of the ALJ, and will not be overturned unless the determination cannot be supported by substantial evidence).

Once again, while we understand that Plaintiff disagrees with the weight given to the certain medical providers, we have disposed of those issues. We also do not agree that the ALJ failed to comment on Plaintiff's credibility, or that he undermined Borges' statements with "misguided logic." [D.E. 11, p. 19].[8] In our view, it is apparent that the ALJ weighed Borges' medical condition as a whole before making his credibility determination and then articulated his reasons for reaching that

---

[8]     On a related note, Plaintiff writes that the ALJ "never explicitly said that Ms. Borges was 'not credible' or 'less than credible.' But this does not matter for purposes of our analysis. *See Foote*, 67 F.3d at 1562 (finding that an adequate credibility finding "need not cite particular phrases or formulations." (citing *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982)).

conclusion. Accordingly, Plaintiff has failed to offer any grounds for remand based on the credibility determination made by the ALJ concerning her testimony at the hearing. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989) ("In sum, the ALJ specifically articulated at least three reasons for rejecting appellant's subjective complaints of pain. Her argument that he improperly discredited her testimony on this point is accordingly without merit."); *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."); *Brito v. Comm'r, Soc. Sec. Admin.*, 687 F. App'x 801, (11th Cir. 2017) ("The ALJ is not required to examine every piece of evidence in his opinion, so long as the decision does not broadly reject the claimant's case and is sufficient for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.") (internal quotation omitted).

## IV.   CONCLUSION

The Court's limited standard of review does not allow for the re-weighing of evidence; instead, our inquiry is limited into whether or not substantial evidence in the record as a whole can support the ALJ's findings. *Richardson*, 402 U.S. at 401; *Winschel*, 631 F.3d at 1178. Here, substantial evidence supports the ALJ's findings, and his decision rests on proper legal standards. We therefore **RECOMMEND** that Defendant's Motion for Summary Judgment be **GRANTED**, Plaintiff's Motion be **DENIED**, and the decision of the Commissioner be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable Robert N. Scola, United States District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 17th day of January, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge